BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

HILARY K. PERKINS
Assistant Director

NOAH T. KATZEN
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
(202) 305-2428
(202) 514-8742 (fax)
Noah.T.Katzen@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. FOOD AND DRUG ADMINISTRATION, *et al.*,<br><br>Defendants. | No. 1:23-cv-03026<br><br>DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION |

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION

1

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………1

BACKGROUND…………………………………………………………………….…4

    I.   Statutory and Regulatory Background………………………………….…………..4

    II.  Factual and Procedural Background……………………….………………..6

STANDARD OF REVIEW…………………………………………………………..11

ARGUMENT……………………………………………………………………12

    I.   Plaintiffs' Claims Are Unlikely To Succeed On The Merits…………………………12

        A.  Plaintiffs Fail To Administratively Exhaust Their Claims………………………12

        B.  Plaintiffs Lack Standing……………………………………………………17

        C.  FDA's Actions Were Lawful and Reasonable…………………………………22

    II.  Plaintiffs Fail To Show Irreparable Harm...…………………………………....27

    III. The Equities And Public Interest Weigh Against An Injunction……………………29

    IV. Plaintiffs' Requested Relief Exceeds Any Permissible Scope………………………31

CONCLUSION…………………………………………………….………………34

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION

**INTRODUCTION**

More than 22 years ago, the U.S. Food and Drug Administration (FDA) approved mifepristone as safe and effective for termination of early pregnancy subject to certain restrictions on distribution.[1] While FDA has approved modifications to that set of restrictions (known since 2007 as a Risk Evaluation and Mitigation Strategy (REMS)) on several occasions, the restrictions have always required that patients sign a Patient Agreement Form and that health-care providers become certified and agree, among other things, that they have the ability to accurately date pregnancies, diagnose ectopic pregnancies, and provide or arrange for surgical intervention if necessary. And until January 3, 2023, the REMS required mifepristone to be dispensed in clinics, medical offices, and hospitals, by or under the supervision of a certified provider (the in-person dispensing requirement). Prior to that time, the REMS did not permit pharmacies to dispense the drug.

---

[1] This brief uses "mifepristone" as shorthand to refer to drug products that are approved for medical termination of early pregnancy. FDA has separately approved another manufacturer's drug, Korlym, which has mifepristone as its active ingredient and is approved for the treatment of Cushing's syndrome. This litigation does not affect Korlym.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION – 1

During this more-than-two-decade period (spanning from September 2000 to January 2023), Plaintiffs did not object to *any* of these requirements by filing a citizen petition (*see* 21 C.F.R. §§ 10.25, 10.30, 10.45) or by seeking judicial relief. Then, on January 3, 2023, FDA approved supplemental applications that modified the REMS to remove the in-person dispensing requirement and permit certified pharmacies to dispense the drug. Plaintiffs now rely on FDA's January 2023 REMS modification—which *reduced* the restrictions on the distribution of mifepristone—as a springboard to ask this Court to preliminarily enjoin FDA from applying restrictions that it first imposed when mifepristone was approved in 2000. Plaintiffs also ask this Court to preliminarily enjoin FDA "from taking any action to remove mifepristone from the market or cause the drug to become less available," despite bringing no claim supporting that relief.

The Court should deny Plaintiffs' Motion for Preliminary Injunction. Plaintiffs are unlikely to succeed on the merits. First, they failed to administratively exhaust their claims by filing a citizen petition with the agency (as agency regulations require), so as to give the agency an opportunity to apply its expertise in the first instance. Had Plaintiffs done so, FDA would have carefully evaluated their claims that the REMS is unnecessary to assure safe use of mifepristone and unduly impedes access to the drug. These matters lie at the heart of the agency's core statutory mandate, and FDA is entitled to evaluate these issues

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION – 2

in the first instance. Second, Plaintiffs lack standing to challenge an agency action the sole effect of which was to make the REMS *less* restrictive and permit dispensing of the drug by certified pharmacies. Third, on the merits, Plaintiffs disregard FDA's reasoned explanation for its 2023 REMS modification and fail to show that FDA acted unreasonably or contrary to law.

Nor have Plaintiffs met their burden on any of the other preliminary injunction factors. They cannot credibly claim to be irreparably harmed by FDA's decision to retain two 22-year-old requirements, remove the in-person dispensing requirement, and permit certified pharmacies to dispense mifepristone. Tellingly, for over two decades, Plaintiffs did not challenge requirements that, on net, were *more* restrictive than the modified REMS FDA approved on January 3, 2023. At the very least, their delay shows that any harm is not so significant as to justify a preliminary injunction that would upset the status quo and enjoin FDA from "enforcing or applying" (Mot. 34) requirements that in its expert judgment are necessary to assure the drug's safe use. Finally, even if Plaintiffs were entitled to some relief (they are not), the preliminary injunction that they request is not tailored to their claims, violates the well-established principle that the proper remedy in an Administrative Procedure Act (APA) case is limited to the challenged agency action, and is inconsistent with Federal Rule of Civil Procedure 65(d).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 3

**BACKGROUND**

## I.      Statutory and Regulatory Background

The Federal Food, Drug, and Cosmetic Act (FDCA) generally prohibits the interstate distribution of new drugs that have not received FDA approval. 21 U.S.C. § 355(a). In deciding whether to approve a new drug, FDA evaluates whether a new drug application contains scientific evidence demonstrating that the drug is safe and effective for its intended uses. *Id.* § 355(d); *see also* 21 C.F.R. §§ 314.50, 314.105(c). Similarly, when a sponsor submits a supplemental new drug application proposing changes to the conditions of approval for a drug (such as changes to a drug's labeling or FDA-imposed restrictions), FDA reviews the scientific evidence submitted in support of the changes. *See* 21 C.F.R. § 314.70.

Since 1992, FDA's regulations (the Subpart H regulations) have authorized FDA to require conditions "needed to assure safe use" of certain new drugs. Final Rule, 57 Fed. Reg. 58,942, 58,958 (Dec. 11, 1992) (codified at 21 C.F.R. § 314.520). In the Food and Drug Administration Amendments Act of 2007 (FDAAA), Congress codified and expanded the Subpart H regulations by giving FDA authority to require a REMS when it determines that such restrictions are necessary to ensure that the benefits of a drug outweigh the risks. *See* Pub. L. No. 110-85, tit. IX, § 901 (codified at, *inter alia*, 21 U.S.C. § 355-1). FDA may require that a REMS include "elements to assure safe use" if necessary to mitigate a

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 4

serious health risk and if certain statutory criteria relating to ensuring safety and minimizing the burden of restrictions are satisfied. *See* 21 U.S.C. § 355-1(f)(1)-(2).

FDAAA expressly addressed how to incorporate drugs with existing Subpart H restrictions into the new REMS framework. *See* Pub. L. No. 110-85, tit. IX, § 909 (21 U.S.C. § 331 note). Specifically, Congress "deemed" such drugs to have a REMS in effect, with the Subpart H restrictions serving as "elements to assure safe use." *Id.* § 909(b). Thereafter, application holders were required to submit supplemental new drug applications with a proposed REMS, which FDA then reviewed. *See id.*

FDAAA also provides standards for modifying an existing REMS. *See* 21 U.S.C. § 355-1(g)(4). As relevant here, FDA may require an applicant to "submit a proposed modification" to the REMS if the agency "determines that 1 or more goals or elements should be added, modified, or removed" from the approved REMS to "ensure the benefits of the drug outweigh the risks of the drug" or "minimize the burden on the health care delivery system of complying with the strategy." *Id.* § 355-1(g)(4)(B); *see also id.* § 355-1(f)(5)(B)-(C). If FDA requires a modification to a REMS, the applicant must propose that modification within 120 days. *Id.* § 355-1(g)(4)(B).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION – 5

## II.    Factual and Procedural Background

In 2000, FDA approved the marketing of mifepristone (under the brand name Mifeprex) for medical termination of early intrauterine pregnancy when used in a regimen with an already-approved drug, misoprostol. At the same time, to assure its safe use, FDA placed certain Subpart H "restrictions to assure safe use" on the distribution and use of the drug product, including requirements that (1) patients sign a Patient Agreement Form, (2) healthcare providers certify (among other things) that they have the ability to accurately date pregnancies, diagnose ectopic pregnancies, and either perform surgical intervention or arrange for others to perform it if necessary, and (3) the drug be dispensed in person at a certified provider's office. *See* Compl. Ex. D, at 4.

Because these restrictions were in place on the effective date of FDAAA, mifepristone was "deemed to have in effect an approved [REMS]" that continued these "elements to assure safe use." Pub. L. No. 110-85, § 909(b)(1); *see also* 73 Fed. Reg. 16,313 (Mar. 27, 2008). In 2011, FDA approved the post-FDAAA mifepristone REMS after determining that it remained "necessary … to ensure the benefits of [mifepristone] outweigh the risks of serious complications." Katzen Decl. Ex. A. After FDA approved a generic version of the drug in 2019, it approved a single, shared system REMS for both Mifeprex and the generic version, known as the Mifepristone REMS Program. Katzen Decl. Ex. B.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 6

FDA has since reviewed and modified the Mifepristone REMS Program.[2] On May 7, 2021, FDA announced that it would review elements of the Mifepristone REMS Program to determine whether those elements should be modified. Katzen Decl. Ex. C (REMS Modification Rationale Review) at 8. FDA's review encompassed "multiple different sources of information," including "published literature," "safety information," adverse event reports, a "REMS assessment report" submitted by the applicants, and "information provided by advocacy groups, individuals, and the [a]pplica[tion holders]." *Id.* at 10. The agency's literature review covered material published between March 29, 2016 (the date of the last REMS modification) and July 26, 2021, and included publications found on PubMed and Embase or provided by "advocacy groups, individuals, plaintiffs in [*Chelius v. Becerra*, 1:17-493-JAO-RT (D. Haw.)], and the [a]pplicat[ion holders]," as well as "healthcare providers and researchers." *Id.* at 10-11.

On December 16, 2021, FDA announced its conclusion that "certain elements of the Mifepristone REMS Program remain necessary to assure the safe use of mifepristone" and that "the Mifepristone REMS Program continues to be

---

[2] https://perma.cc/7BQC-AJP9 (see Approval Date(s) and History, Letters, Labels, Reviews for NDA 020687).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION – 7

necessary to ensure the benefits outweigh the risk." Katzen Decl. Ex. D at 6. Specifically, FDA found that prescriber certification and the Patient Agreement Form continue to be necessary components of the REMS. *Id.* at 22. At the same time, FDA found that the REMS "must be modified to remove" the in-person dispensing requirement, which would "allow, for example, dispensing of mifepristone by mail via certified prescribers or pharmacies." *Id.* at 35. Thus, FDA concluded based on its review that "mifepristone will remain safe and effective if the in-person dispensing requirement is removed, provided all the other requirements of the REMS are met and pharmacy certification is added." *Id.*

FDA explained its conclusions in a review memorandum. Katzen Decl. Ex. C. *First*, FDA explained its rationale for retaining the prescriber certification requirement, which allows mifepristone to be prescribed only by providers who are certified under the REMS and agree, among other things, that they can accurately date pregnancies, diagnose ectopic pregnancies, and perform or arrange for surgical intervention for patients who experience complications. *Id.* at 12-14. FDA explained that the prescriber certification requirement protected against the risk that providers would not detect and appropriately manage complications, such as missed ectopic pregnancy and heavy bleeding from incomplete abortion. *Id.* Because FDA's review of the relevant literature "did not identify any studies comparing providers who met" the qualifications required by the prescriber

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 8

certification "with providers who did not," there was "no evidence to contradict [FDA's] previous finding that" the requirement is "necessary to mitigate the serious risks associated with the use of mifepristone in a regimen with misoprostol." *Id.* Thus, the agency concluded that prescriber certification "continues to be a necessary component of the REMS to ensure the benefits of mifepristone for medical abortion outweigh the risks," and that "[t]he burden of prescriber certification has been minimized to the extent possible" because each provider need only provide one certification to each of the two drug application holders for mifepristone. *Id.*

*Second*, FDA explained that the Patient Agreement Form "ensures that patients are informed of the risks of serious complications associated with mifepristone," "serves as an important counseling component," and "document[s] that the safe use conditions of the Mifepristone REMS Program have been satisfied." *Id.* at 14-15. Although the agency considered removing this requirement in 2016, it ultimately decided to retain this requirement. *Id.* at 16. In 2021, FDA concluded that "literature that focused on the informed consent process" "d[id] not provide evidence that would support removing" the Patient Agreement Form requirement. *Id.* at 16-17. Among other things, the agency found that the Patient Agreement Form "is an important part of standardizing the medication information on the use of mifepristone that prescribers communicate to their patients," "does

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 9

not impose an unreasonable burden on providers or patients," and thus "remains necessary to assure the safe use of Mifepristone." *Id.* at 18.

*Third*, based on an extensive review of assessment reports submitted by the application holders, adverse event data, and the literature, FDA concluded that the in-person dispensing requirement was no longer necessary because, among other things, "there does not appear to be a difference in adverse events between periods during the COVID-19 [public health emergency] when the in-person dispensing requirement was being enforced and periods when the in-person dispensing requirement was not being enforced." *Id.* at 38. The agency therefore concluded that "mifepristone will remain safe and effective for medical abortion if the in-person dispensing requirement is removed, provided all the other requirements of the REMS are met, and pharmacy certification is added." *Id.* at 39.

FDA expressly tied the addition of the pharmacy certification requirement to the removal of the in-person dispensing requirement. *See id.* at 40 ("Given this modification to the dispensing requirements in the REMS, it is necessary to add a requirement for certification of pharmacies ...."). Adding this requirement would "incorporate[] pharmacies into the REMS, ensur[ing] that [they] are aware of and agree to follow applicable REMS requirements, and ... that mifepristone is only dispensed pursuant to prescriptions that are written by certified prescribers." *Id.* "Without pharmacy certification, a pharmacy might dispense product that was not

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 10

prescribed by a certified prescriber." *Id.* Consequently, to "ensure the benefits of mifepristone for medical abortion outweigh the risks while minimizing the burden imposed by the REMS on healthcare providers and patients," FDA approved "the removal of the in-person dispensing requirement" and added the "requirement for pharmacy certification." *Id.* at 41.

Accordingly, FDA directed the drugs' application holders to submit supplemental applications proposing conforming modifications to the REMS. Katzen Decl. Exs. E & F. The application holders submitted their supplemental applications in 2022, and FDA approved them on January 3, 2023, confirming its December 16, 2021, determination that mifepristone will remain safe and effective if the in-person dispensing requirement is removed, provided all the other REMS requirements are met and pharmacy certification is added. Katzen Decl. Exs. G at 9-15 & J.

## STANDARD OF REVIEW

Preliminary injunctive relief is an "extraordinary and drastic" remedy that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20-23 (2008); *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). "A plaintiff seeking a preliminary injunction must establish that [it] is [1] likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 11

equities tips in [its] favor, and [4] that an injunction is in the public interest."

*Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017) (internal

quotation marks omitted; alterations in original). The third and fourth factors

merge when the federal government is the non-movant. *Drakes Bay Oyster Co. v.*

*Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418,

435 (2009)). A preliminary injunction that "would alter, rather than preserve, the

status quo" is "disfavored unless there is a very strong showing in favor of the

moving party." *Miracle v. Hobbs*, 808 F. App'x 470, 473 (9th Cir. 2020).

**ARGUMENT**

## I.    Plaintiffs' Claims Are Unlikely To Succeed On The Merits

### A. Plaintiffs Failed To Administratively Exhaust Their Claims

Plaintiffs challenge FDA's approval of supplemental applications proposing

modifications to the Mifepristone REMS Program. That challenge is unlikely to

succeed because Plaintiffs failed to exhaust their administrative remedies. As FDA

has repeatedly demonstrated in approving modifications to the REMS over the past

22 years, the agency is committed to carefully evaluating new evidence and

determining whether particular restrictions remain necessary to assure safe use of

mifepristone. There is no reason to think the agency would take a different

approach to Plaintiffs' evidence if Plaintiffs were to submit it to the agency.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 12

The APA requires a party to exhaust any administrative remedy mandated by statute or agency rule. *See Darby v. Cisneros*, 509 U.S. 137, 153 (1993). FDA regulations set forth a detailed (and mandatory) administrative process for challenging agency action. As relevant here, "[a] request that [FDA] take or refrain from taking any form of administrative action must first be the subject of a final administrative decision based on [a citizen petition.]" 21 C.F.R. § 10.45(b); *id.* §§ 10.25(a), 10.30; *see also id.* § 10.1 (defining "administrative action" as "every act, including the refusal or failure to act, involved in the administration of any law by the Commissioner"). Moreover, when challenging an agency action, a party "who wishes to rely upon information or views not included in the administrative record shall submit them to the Commissioner with a new petition to modify the action under § 10.25(a)." *Id.* § 10.45(f).

Exhaustion requirements "avoid premature claims and [] ensure that the agency possessed of the most expertise in an area be given first shot at resolving a claimant's difficulties." *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002). Congress empowered FDA to weigh the scientific evidence and determine whether a drug's distribution restrictions are necessary to assure safe use. As the Ninth Circuit has explained, requiring a plaintiff challenging FDA approval of a drug application to first file a citizen petition is necessary to "prevent[] premature interference with agency processes so that the agency may

function efficiently and so that it many have an opportunity to correct is own errors, to afford the parties and courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Center for Food Safety v. Hamburg*, 696 F. App'x 302, 303 (9th Cir. 2017).

Plaintiffs' claims turn on issues within the agency's scientific expertise. They involve technical and factual assertions about, for example, safety comparisons of mifepristone to other drugs and alleged unique burdens of REMS requirements on States—including burdens that Plaintiffs allege have arisen only after FDA's determination on December 16, 2021, that the REMS must be modified. *See, e.g.*, Am. Compl. ¶¶ 3, 25, 147, 176, 178-88, 212, 219; Mot. 1, 6, 16, 23. Their claims also rely on studies that were not before the agency at the time of that determination. *See, e.g.*, Am. Compl. ¶¶ 141 n.62, 143 n.66, 149 n.79, 150 n.80; Godfrey Decl. ¶ 22 n.21; Janiak Decl. ¶ 15 n.7. Requiring exhaustion will ensure that these "technical and policy questions" will be "addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015). This will "afford the parties and courts the benefit of [FDA's] experience and expertise, and [allow it] to compile a record which is adequate for judicial review." *Center for Food Safety*, 696 F. App'x at 303.

In similar cases, courts (including this one) have required a party challenging FDA's approval of a drug application or other marketing authorization to first file a citizen petition presenting the challenge to the agency. *See, e.g.*, *Jensen v. Biden*, No. 4:21-cv-5119, 2021 WL 10280395 (E.D. Wash. Nov. 19, 2021) (Rice, J.) (holding that plaintiff who failed to file a citizen petition did not exhaust administrative remedies in challenge to FDA emergency use authorizations); *Ass'n of Am. Physician & Surgeons, Inc. v. FDA (AAPS)*, 539 F. Supp. 2d 4, 21-24 (D.D.C. 2008) (holding that physicians and pharmacists who failed to file a citizen petition did not exhaust administrative remedies in challenge to FDA approval of a supplemental new drug application), *aff'd*, 358 F. App'x 179 (D.C. Cir. 2009); *see also Doe #1-#14 v. Austin*, 572 F. Supp. 3d 1224, 1234 (N.D. Fla. 2021) (refusing to consider extra-record material in challenge to FDA approval of a vaccine where "plaintiffs have not pursued an available administrative route … to force the FDA to consider the materials they submit here") (citing 21 C.F.R. § 10.45(f)).

Likewise, Plaintiffs here seek judicial review of FDA's approval of supplemental applications without first raising their challenge with the agency. Indeed, Plaintiffs never filed a citizen petition challenging *any* FDA action regarding *any* restriction on mifepristone in the 22 years that the drug has been marketed. While Plaintiffs objected to the REMS in a March 2020 letter

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 15

referencing a public docket regarding unrelated FDA guidance documents, *see* FDA-2020-D-1106-0061 at regulations.gov, that letter did not include all of their present contentions or reference the studies they now rely upon. In any event, Plaintiffs have never sought relief through a citizen petition, the agency's prescribed administrative remedy. *See* 21 C.F.R. § 10.30 (setting forth detailed requirements for citizen petitions); *Agua Caliente Tribe of Cuperño Indians of Pala Reservation v. Sweeney*, 932 F.3d 1207, 1219 (9th Cir. 2019) (holding that letter did not exhaust administrative remedies where statute prescribed a different process); *Reddic v. Evans*, 2011 WL 2181311, at *3 (N.D. Cal. Jun. 3, 2011) (same).[3]

Finally, Plaintiffs cannot satisfy the exhaustion requirements by pointing to the citizen petition submitted by the American College of Obstetricians and

---

[3] Nor is there anything in FDA's response to that letter (*see* Katzen Decl. Ex. J) that suggests submitting a citizen petition would have been futile. *See Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983) (finding "nothing in the record to indicate that a citizen's petition to the Commissioner" challenging agency conclusions set forth in a letter "would have been ineffective or futile"); *Agua Caliente*, 932 F.3d at 1219 (finding that agency's response to a letter "does not suggest futility").

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION – 16

Gynecologists (ACOG) in 2022. *See* Am. Compl. ¶¶ 139-43; Mot. 21, 25. ACOG

and the other petitioners are not plaintiffs in this case. Moreover, that petition

requested different relief. ACOG requested that FDA ask the holder of the new

drug application for Mifeprex to submit an application to add miscarriage

management as a new indication for mifepristone. FDA denied that request

because it is up to the new drug application holder to decide whether to seek

approval for a new indication. Compl. Ex. S. That conclusion led FDA to reject the

petition's related request to eliminate or modify the REMS for mifepristone "so

that it is not unduly burdensome for a miscarriage management indication." *Id.* The

related request, FDA explained, was "premature" because miscarriage

management "is not a currently approved indication for mifepristone." *Id*. ACOG's

citizen petition did not ask FDA to consider the new reasons now offered by

Plaintiffs for eliminating the REMS.

### B. Plaintiffs Lack Standing

Plaintiffs also lack standing. To meet the "irreducible constitutional

minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992),

Plaintiffs "must show (i) that [they] suffered an injury in fact that is concrete,

particularized, and actual or imminent; (ii) that the injury was likely caused by the

defendant[s]; and (iii) that the injury would likely be redressed by judicial relief,"

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 17

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Plaintiffs offer three theories of standing, but each of them fails.

*First*, Plaintiffs lack standing to sue the federal government as *parens patriae* on behalf of their residents. *See* Mot. 15. In general, a "State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982) (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485–486 (1923)). Plaintiffs suggest that they have a "quasi-sovereign interest in the health and well-being" of their residents, but the federal government is "the ultimate parens patriae of every American citizen." *S. Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966); *see also Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 180-83 (D.C. Cir. 2019) (applying this rule to APA claims); *cf. Challenge v. Moniz*, 218 F. Supp. 3d 1171, 1177-78 (E.D. Wash. 2016) (Rice, J.) (holding that Congress had "overridden" *Mellon's* limitation in a statute that "explicitly" defines the "person" who may sue "to include a state").

*Second*, Plaintiffs' argument that they suffer direct "pecuniary harms," Mot. 14, fails because they have not established that the challenged agency action—*i.e.*, FDA's January 3, 2023, approval of the supplemental applications modifying the Mifepristone REMS Program—caused those harms. Plaintiffs aver that their Medicaid programs incur greater costs when patients choose surgical abortion over

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 18

medication abortion, but apart from conclusory assertions, *see, e.g.*, Birch Decl.

¶ 10, they offer no support for their assertion that "the [January 2023] REMS

*causes*" patients to obtain surgical abortions, *see* Mot. 15 (citing no evidence for

this proposition). For example, they provide no evidence that, by requiring patients

who wish to take mifepristone to sign a Patient Agreement Form and obtain the

drug from or under the supervision of a certified prescriber or from a certified

pharmacy, the REMS causes a substantial number of patients to obtain surgical

abortion instead. Thus, Plaintiffs' assertion that the REMS "encourage[s]" patients

to seek surgical abortion "is purely speculative" and therefore cannot support their

standing. *See Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976)

(rejecting as speculative plaintiffs' unsupported contention that a tax policy would

necessarily encourage hospitals to deny services to indigent patients).

      Plaintiffs likewise fail to establish that FDA's January 2023 action caused

the various "administrative burdens" on pharmacies of which Plaintiffs complain.

Mot. 14. Many of the specific administrative tasks about which Plaintiffs complain

reflect their independent choice to establish new systems that may facilitate their

pharmacies' efforts to dispense mifepristone, but they do not reflect burdens

imposed by the REMS itself. For example, while the REMS requires patients to

sign a Patient Agreement Form before obtaining mifepristone, it does not require

providers to "change[]" and "test" their information technology systems to "ensure

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 19

that patients who seek telehealth medication abortion can readily sign the Patient

Agreement Form," Godfrey Decl. ¶ 35. And while the REMS requires pharmacies

that wish to dispense mifepristone to first satisfy certain conditions, *see* Compl. Ex.

P ("Pharmacy Agreement Form"), it does not require pharmacies to "develop[] new

IT systems" to facilitate those efforts, or "creat[e] billing workflows specifically

for insurance carriers that do not cover mifepristone," DasGupta Decl. ¶ 15.

*Third,* Plaintiffs' generalized "interest[] in delivering high-quality patient

care," Mot. 14, also does not confer standing. This vague theory fails to identify a

concrete injury to their providers' interest in practicing medicine. *See Spokeo, Inc.

v. Robins*, 578 U.S. 330, 340-41 (2016) (to be concrete, an injury must be "real, not

abstract" (citation and quotation marks omitted)). To the extent that Plaintiffs base

this theory on their allegations that the REMS requirements they challenge harm

patient care, that theory is speculative for the reasons explained above. *See supra*

pp. 18-19. This theory of standing also lacks a limiting principle: it would give

medical providers standing to challenge virtually any FDA action relating to drugs,

since nearly every such action has some effect on the availability of drugs that

providers may prescribe or recommend. Plaintiffs' vague assertion of an injury to

their providers' interest in providing patient care therefore fails.

Finally, Plaintiffs' theories of standing fail for yet another reason: Plaintiffs

do not meet their burden to show that success on their claims would redress their

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 20

injuries. Plaintiffs stress that they are challenging the specific action FDA took on January 3, 2023. *See* Am. Compl. ¶¶ 258, 262, 265, 269 (identifying the "2023 REMS" as the object of Plaintiffs' claims); Pls.' Resp. to Defs.' Mot. for Extension (Dkt. 19), 3 ("The REMS at the heart of this dispute did not take effect until January 3, 2023" such that Plaintiffs' claims were "not ripe until that date."). Yet it is unclear how enjoining or vacating that action[4] would redress Plaintiffs' injuries. After all, FDA's January 2023 decision *eased* the approved restrictions on mifepristone's distribution and made them less burdensome than they have ever been in the 22 years since the drug's approval.[5]

---

[4] For the reasons explained *infra* Part IV, Plaintiffs could not be entitled to any broader relief.

[5] Plaintiffs' claims should also fail for the additional reason that venue is improper. Plaintiffs assert venue is proper in this district based on the residence of the State of Washington. But a plaintiff entity "resides" only in the district where it has its "principal place of business," 21 U.S.C. § 1391(c)(2), which here is the state capital in the Western District of Washington. Defendants recognize, however, that the Ninth Circuit has held otherwise. *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 21

## C. FDA's Actions Were Lawful And Reasonable

Plaintiffs' claims are unlikely to succeed even if the Court reaches the merits. Under the APA, the Court reviews agency action to determine whether it is arbitrary and capricious or contrary to law. 5 U.S.C. § 706. Applying the "forgiving" arbitrary-and-capricious standard, *Env'tl Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 359 (9th Cir. 2003), the Court must uphold agency action unless "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or if the agency's decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 733 (9th Cir. 2017). Review is "at its most deferential" with respect to an agency's scientific determinations within its area of expertise. *Baltimore Gas & Elec., Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1982). In particular, "[FDA's] judgments as to what is required to ascertain the safety and efficacy of drugs fall squarely within the ambit of the FDA's expertise and merit deference from [courts]." *A.L Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1490 (D.C. Cir. 1995) (quoting *Schering Corp. v. FDA*, 51 F.3d 390, 399 (3d. Cir. 1995)); *see also FDA v. Am. Coll. of Obstetricians & Gynecologists*, 141 S. Ct. 578, 579 (2021) (Roberts, C.J., concurring) (explaining

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION – 22

that the "significant deference" owed to FDA's judgments weighed against "compel[ling] the FDA to alter the regimen for medical abortion").

Under these principles, FDA's January 2023 decision should be upheld. When determining whether to modify elements to assure safe use in an approved REMS, FDA considers both the need for restrictions to ensure that the benefits of the drug outweigh the risks and the burdens restrictions impose on patients and the healthcare system more generally. *See* 21 U.S.C. § 355-1(g)(4)(B); *see also id.* § 355-1(f)(1), (2), (5)(B). Here, in deciding whether and how the Mifepristone REMS Program should be modified, FDA asked whether evidence since the agency's review of the REMS in 2016 established that a particular existing restriction either was no longer necessary to ensure that the benefits of the drug outweigh the risks or was unduly burdensome on patients or the healthcare system. After weighing the evidence before it, the agency concluded that the Patient Agreement Form and prescriber certification requirements must be retained; that the in-person dispensing requirement must be removed; and that a pharmacy certification requirement must be added to permit certified pharmacies to dispense mifepristone. The agency's explanation of these conclusions exemplified reasoned decisionmaking. *See supra* pp. 8-11. The APA requires no more.

Plaintiffs ignore (indeed, do not even mention) FDA's reasoned explanation for its approval of the January 2023 modification to the Mifepristone REMS

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 23

Program. Instead, they argue that FDA's approval is "contrary to law" because mifepristone is safe and the REMS restrictions are "unrelated" to any medical risk and unduly burdensome on rural patients. *See* Mot. 16-19. But Plaintiffs' argument misses the point—FDA has found mifepristone to be safe *with* the REMS requirements Plaintiffs seek to have removed. Katzen Decl. Ex. C at 39 ("[M]ifepristone will remain safe and effective for medical abortion if the in-person dispensing requirement is removed, *provided all the other requirements of the REMS are met, and pharmacy certification is added ….*") (emphasis added). In 2023, FDA considered the burdens of the REMS restrictions and explained that they could be reduced but that certain restrictions nonetheless remained necessary to assure the safe use of the product. Were Plaintiffs to submit new evidence in a citizen petition to FDA showing that the REMS is unnecessary to assure safe use of mifepristone and unduly burdens access to the drug (which they have not done, *see supra* pp. 12-17), FDA would carefully weigh that evidence, just as it has always done when evaluating the necessity of particular restrictions.

Contrary to Plaintiffs' suggestion (Mot. 21), the lack of a REMS for Korlym (a different drug with mifepristone as its active ingredient, *see supra* n.1) does not support a different conclusion. In deciding whether to require a REMS for a particular drug, FDA makes a case-by-case determination that involves weighing the drug's risks and benefits in light of its particular conditions of use and other

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 24

factors. *See* 21 U.S.C. § 355-1(a)(1). Thus, the fact that there is no REMS for Korlym does not compel FDA to reach the same result for Mifeprex and its generic, which have conditions of use very different from Korlym's. Indeed, FDA conducted this case-by-case inquiry for Korlym, explicitly considering the REMS for Mifeprex, and explained why Korlym does not require a REMS to assure safe use of the drug to treat Cushing's syndrome. *See* Katzen Decl. Ex. H.

Plaintiffs' remaining arguments simply underscore their failure to exhaust. They point to a single Canadian study which, according to Plaintiffs, shows that mifepristone is safe without restrictions. Mot. 21; Am. Compl. ¶ 143. But that study was conducted in 2022, after FDA had completed its literature review for the January 2023 REMS modification. Had Plaintiffs submitted a citizen petition asking FDA to consider this study, the agency would have done so. *See* 21 C.F.R. § 10.45(f) (providing that an interested party that wishes to rely on information not before FDA must first file a citizen petition). Similarly, if Plaintiffs believe they can identify burdens that FDA did not consider, they must raise those issues in a citizen petition to afford FDA an opportunity to consider them in the first instance.

Plaintiffs' arguments that FDA's approval of the January 2023 REMS modification was arbitrary and capricious, Mot. 19-26, likewise fail. Despite having joined a recent amicus brief recognizing that "there can be no doubt that the FDA's overall conclusions regarding medication abortion's safety and efficacy are

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 25

based on substantial evidence," *see* Katzen Decl. Ex. I at 2, Plaintiffs emphasize that the REMS is opposed by certain private medical organizations. Mot. 20-21. But the APA requires deference *to FDA. See, e.g.*, *Am. Coll. of Obstetricians & Gynecologists*, 141 S. Ct. at 579 (Roberts, C.J., concurring). Here, FDA met its burden to provide a reasoned explanation for its conclusion that the requirements of the REMS are scientifically justified, necessary to ensure the benefits of the drug outweigh the risks, and not unduly burdensome. Plaintiffs' arguments to the contrary either raise issues never put before the agency or rest on disagreement with how FDA weighed the relevant factors.[6] None of these arguments overcomes FDA's reasoned decisionmaking.

---

[6] In a footnote, Plaintiffs contend that the January 2023 REMS modification violates the equal protection component of the Fifth Amendment. *See* Mot. 18-19 n.3. A conclusory argument presented in a footnote cannot provide the basis for a preliminary injunction. *See First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d 929, 935 (N.D. Cal. 2008). Regardless, because Plaintiffs do not allege discrimination on the basis of any protected category, their claim is subject to rational basis review. *See, e.g.*, *Vargas v. Chelan Cnty. Regional Justice Ctr.*, No. CV-09-39, 2010 WL 685002, at *4 (E.D. Wash. Feb. 22, 2010).

## II.    Plaintiffs Fail To Show Irreparable Harm

Plaintiffs also have not met their burden to establish that they will suffer irreparable harm absent a preliminary injunction. To meet that burden, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). Because Plaintiffs fail to establish standing, they likewise cannot meet the higher burden to establish that they would likely face irreparable harm absent the requested relief.

Plaintiffs' two-decade delay in raising their claims to either FDA or any court further weighs against a finding of irreparable harm. Since 2000, restrictions on the distribution of mifepristone have been at least as restrictive as the 2023 REMS modification. As explained above, the Patient Agreement Form and prescriber certification have been required that entire time. And until January 2023, the REMS did not permit *any* pharmacy to dispense mifepristone, either with or without a pharmacy certification. Thus, the restrictions allegedly causing Plaintiffs'

---

For all the reasons described above, FDA's decision was rationally related to the legitimate governmental interest in ensuring drug safety.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 27

injuries date back to 2000, and their delay in seeking relief "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). In short, Plaintiffs have "sle[pt] on [their] rights," which "demonstrate[es] that there is not an urgent need for 'speedy action.'" *ADM Milling Co v. Columbia Plateau Producers, L.L.C.*, 2:20-cv-0343, 2020 WL 5802344, at *6 (E.D. Wash. Sept. 28, 2020) (Rice, J.).

Plaintiffs attempt to show irreparable harm from the pharmacy certification requirement in isolation, divorced from the 2023 REMS modification as a whole. But the net effect of the 2023 REMS modification was to *reduce* the burden associated with accessing mifepristone: by removing the in-person dispensing requirement and adding a pharmacy certification requirement, FDA *permitted* the dispensing of mifepristone in a manner that was previously *prohibited*. Plaintiffs cannot show irreparable harm from FDA allowing pharmacies to dispense mifepristone on the condition that they satisfy the pharmacy certification requirement when, prior to January 2023, the REMS did not permit pharmacies to dispense mifepristone under any circumstances.

Moreover, even considering only the pharmacy certification requirement, Plaintiffs still waited nearly two months to file suit after the 2023 REMS modification was approved. *See Jensen*, 2021 WL 10280395, at *9 (Rice, J.) (holding that a delay of "nearly two months" weighed against finding irreparable

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 28

harm); *Wise v. Inslee*, No. 2:21-cv-0288, 2021 WL 4951571, at *6 (E.D. Wash. Oct. 25, 2021) (Rice, J.) (same). That delay is significant considering that Plaintiffs have known since December 16, 2021, about the forthcoming modification to the REMS and have been preparing for it since well before January 2023. *See, e.g.*, Reed Decl. ¶ 3 ("For the past four months, I have been participating in a work group at UW that is implementing the amended requirements for the FDA's mifepristone [REMS]."); Singh Decl. ¶ 3 ("[F]or the past 6 months, I have participated [in] operationalizing … FDA's updated [REMS] for mifepristone."); Prager Decl. ¶ 35 (averring that a workgroup to implement the modified REMS "has been meeting for 4 or 5 months"). Given this lead time in which Plaintiffs could have prepared to challenge the 2023 REMS modification, waiting almost two months after approval of that REMS evinces a lack of urgency.

In sum, Plaintiffs have not shown that they will face irreparable harm absent an injunction.

### III.    The Equities And Public Interest Weigh Against An Injunction

Plaintiffs have not shown that they are likely to succeed on the merits or that they are likely to suffer irreparable harm, so the Court need not address the balancing of equities or public interest. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). Nevertheless, those factors also weigh heavily against granting the requested relief.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION – 29

As noted, a preliminary injunction that "would alter, rather than preserve, the status quo" is "disfavored unless there is a very strong showing in favor of the moving party." *Miracle*, 808 F. App'x at 473. "Where no new harm is imminent, and where no compelling reason is apparent, the district court [is] not required to issue a preliminary injunction against a practice which has continued unchallenged for several years." *Oakland Tribune, Inc.*, 762 F.2d at 1377. Considering that the Patient Agreement Form and prescriber certification requirements have existed for 22 years and the net effect of the 2023 REMS modification was to *reduce* restrictions on mifepristone's distribution, Plaintiffs have shown "no new harm" or "compelling reason" justifying a preliminary injunction. *Supra* pp. 27-29.

Plaintiffs' request is especially unjustified because it would undermine Congress's decision to delegate to FDA the responsibility for making scientific judgments about drug safety. *See* 21 U.S.C. § 393(b). The public interest is best served by deferring to FDA's judgments about what restrictions are necessary to ensure drugs are safe. That is particularly true here, where the agency's decisions regarding the conditions on the distribution of mifepristone reflect careful, deliberative decisionmaking informed by years of data. Had Plaintiffs contested those decisions by filing a citizen petition with FDA, the agency would have reached a considered expert judgment on Plaintiffs' claims and created an administrative record fit for judicial review. Instead, through this lawsuit, Plaintiffs

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 30

seek to deprive FDA of that opportunity, asking the Court to declare that mifepristone is safe under conditions that FDA has never approved. As Congress recognized, there is a strong public interest in having an expert scientific agency make scientific judgments about drug safety, and the requested injunction is an impermissible attempt to flout that institutional design.

## IV. Plaintiffs' Requested Relief Exceeds Any Permissible Scope

Even if it were appropriate to enjoin enforcement or application of the 2023 REMS modification (it is not), relief beyond that would not be warranted. This includes Plaintiffs' unprecedented request—untethered to any actual claim for relief or specific harm they assert—to "preliminary enjoin[] FDA from … taking any action to remove mifepristone from the market or otherwise cause the drug to become less available." Mot. 34. That request should be rejected for at least three reasons.

*First*, Plaintiffs' proposed remedy fails a fundamental precept of preliminary injunctive relief: "[a]n injunction must be narrowly tailored to remedy the specific harm shown." *E. Bay Sanctuary Covenant v. Barr*, 934 F. 3d 1026, 1029 (9th Cir. 2019) (internal quotation marks omitted). Under that rule, an injunction is overbroad—and therefore impermissible—when it "reaches beyond the scope of the complaint and enjoins government regulations that were explicitly never challenged or litigated." *Church of Holy Light of Queen v. Holder*, 443 F. App'x

302, 303 (9th Cir. 2011); *see also Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) ("Courts should not enjoin conduct that has not been found to violate any law."). Plaintiffs make no effort to connect their request that the Court enjoin "any action to remove mifepristone from the market or otherwise cause the drug to become less available" to any of their claims. Rather, after devoting the entirety of their Amended Complaint and Motion to attacking the January 2023 REMS modification, Plaintiffs simply announce that in addition to enjoining enforcement and application of that modification, they want this Court to prohibit FDA from doing anything that would make the drug less available.

*Second*, and relatedly, Plaintiffs' request for relief against hypothetical and unchallenged future agency action violates basic principles of administrative law. The APA allows parties to seek review only of discrete "agency actions." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm."); *Arrow Reliance, Inc. v. Califf*, No. 2:22-cv-1057, 2022 WL 18027595, at *2 (W.D. Wash. Dec. 30, 2022) (holding that the APA permits challenges to "circumscribed, discrete agency actions"). And when a party prevails on its APA challenge, the proper remedy—even in the context of a preliminary injunction—is "limited only to vacating the unlawful action, not precluding future agency decisionmaking." *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 46 n.1

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION – 32

(D.C. Cir. 2013); *see also, e.g.*, *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) ("The [APA's] limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law."); *Lujan*, 497 U.S. at 893 ("[T]he flaws in the entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects one of respondent's members."). Here, even if Plaintiffs had valid challenges to the 2023 REMS modification (or to the imposition of the REMS generally), that would hardly justify injunctive relief against hypothetical future actions pertaining to mifepristone's general availability on the market.

  *Third*, Plaintiffs' broad, amorphous remedy also would violate Rule 65(d), which requires that every injunction "state its terms specifically" and "describe in reasonable detail … the act or acts restrained or required." Fed. R. Civ. P. 65(d); *see, e.g.*, *Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1150 (9th Cir. 2011) (holding that an injunction's "general prohibition against using 'illegal, unlicensed and false practices' is too vague to be enforceable" because "[t]he examples of prohibited past conduct do not sufficiently define what additional future conduct will be covered"). Suppose, for example, FDA learns that a batch of mifepristone is contaminated. The FDCA authorizes FDA to recommend that the

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 33

Department of Justice institute proceedings to seize the violative product. *See* 21 U.S.C. § 334. Would Plaintiffs' proposed remedy prohibit that seizure action because it would reduce the availability of mifepristone? There is no limit in Plaintiffs' requested relief that would account for that situation, or any other exercise of FDA's statutorily conferred authority to execute the provisions of the FDCA as they pertain to mifepristone. Such broad relief is not permitted by Rule 65(d).

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

March 17, 2023                         HILARY K. PERKINS
                                       Assistant Director

                                       */s/ Noah T. Katzen*
                                       NOAH T. KATZEN
                                       Trial Attorney
                                       Consumer Protection Branch
                                       U.S. Department of Justice
                                       P.O. Box 386
                                       Washington, DC 20044-0386
                                       (202) 305-2428
                                       (202) 514-8742 (fax)
                                       Noah.T.Katzen@usdoj.gov

                                       *Counsel for Defendants*

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
MOTION FOR PRELIMINARY INJUNCTION – 34

## CERTIFICATE OF SERVICE

I hereby certify that, on March 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


_/s/ Noah T. Katzen_
NOAH T. KATZEN