1    ROBERT W. FERGUSON
      Attorney General
2    NOAH GUZZO PURCELL, WSBA #43492
      Solicitor General
3    KRISTIN BENESKI, WSBA #45478
      First Assistant Attorney General
4    COLLEEN M. MELODY, WSBA #42275
      Civil Rights Division Chief
5    ANDREW R.W. HUGHES, WSBA #49515
      LAURYN K. FRAAS, WSBA #53238
6    Assistant Attorneys General
      TERA M. HEINTZ, WSBA #54921
7    Deputy Solicitor General
      800 Fifth Avenue, Suite 2000
8    Seattle, WA 98104-3188
      (206) 464-7744

9

10             **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**

11

12    STATE OF WASHINGTON, et al.,      NO. 1:23-cv-03026-TOR

13               Plaintiffs,      PLAINTIFF STATES' REPLY IN
                                 SUPPORT OF MOTION FOR
     v.                        PRELIMINARY INJUNCTION

14

15    UNITED STATES FOOD AND      03/28/2023
   DRUG ADMINISTRATION, et al.,      With Oral Argument: 8:30 a.m.
                                      Spokane Courtroom 902

16               Defendants.

17

18

19

20

21

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION ................................................................ 1

II.     ARGUMENT .................................................................... 2

        A.  The Plaintiff States Are Likely to Succeed on the Merits ........... 2

            1.  This challenge is ripe for judicial review ............................. 2

            2.  The States have established standing .................................... 5

            3.  The 2023 REMS is contrary to the REMS statute ................. 9

            4.  The 2023 REMS is blatantly arbitrary and capricious ......... 10

        B.  The Plaintiff States Are Irreparably Harmed ............................ 13

        C.  The Public Interest and Equities Favor Enjoining the REMS .... 15

        D.  Plaintiffs' Requested Relief Matches the Harm Shown:
            Eliminating Unnecessary Restrictions on Mifepristone in the
            Plaintiff States ............................................................... 16

III.    CONCLUSION ................................................................ 17

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.    INTRODUCTION

FDA's response brief, like its decision to continue imposing REMS on mifepristone, ignores the facts and the law. Correcting those errors makes clear that the REMS are unlawful and should immediately be enjoined.

FDA first claims that the Plaintiff States cannot sue because they failed to exhaust administrative remedies, but the Plaintiff States and many others have repeatedly asked FDA to eliminate the mifepristone REMS, and FDA has serially refused. These claims are amply exhausted.

FDA next asserts that the States can show no irreparable harm from the REMS and no standing, but this ignores the well-documented financial costs States are incurring to comply, and the irrefutable harms the REMS impose on patients and State providers. Astonishingly, FDA's brief never mentions *Dobbs*, which allowed states to criminalize abortion, led to an influx of out-of-state patients coming to the Plaintiff States for care, and created grave new legal risks for abortion patients and providers—risks that the REMS exacerbate. The States and Court cannot ignore these harms, even if FDA might rather.

Finally, FDA claims that the REMS is lawful because FDA lacks evidence that mifepristone is safe without the REMS. But this ignores the scientific evidence and the legal standard FDA must apply. FDA imposes no similar restrictions on vastly more dangerous drugs, or even on a higher dose of mifepristone not used for abortion. The agency's actions are unlawful and arbitrary, and the States have satisfied the standard for preliminary relief.

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

## II.    ARGUMENT

2

**A.      The Plaintiff States Are Likely to Succeed on the Merits**

3

**1.      This challenge is ripe for judicial review**

4      The States' arguments that the mifepristone REMS is unsound,

5   unsupported, and harmful have been serially raised to, and rejected by, FDA.

6   These issues have been amply exhausted, and further petitioning would be futile.

7       The evidence demonstrating exhaustion is overwhelming. Most recently,

8   the 2022 citizen petition submitted by ACOG and dozens of other medical

9   professional and healthcare access organizations asked FDA to eliminate the

10  REMS as medically unnecessary and unduly burdensome for *all* uses of the

11  drug—not just miscarriage management. *See* Hughes Decl. Ex. A at 12–17;

12  *contra* Resp. at 17. The petition made the same arguments the Plaintiff States

13  make here, including citing the Canadian study and other evidence FDA now

14  claims is "new." Hughes Decl. Ex. A at 17; ECF No. 35 ¶¶ 141 n.62, 143 n.66

15  (listing studies cited by ACOG petition); *contra* Resp. at 14, 25. Glaringly

16  missing from FDA's argument is any suggestion that it would have reached a

17  different decision if the States had joined ACOG's petition. And FDA cites no

18  authority for the proposition that "plaintiffs in this case" must submit a new

19  petition on the exact same subject. Resp. at 17. Its regulation instead requires the

20  claims to "be the subject" of a petition. 21 C.F.R. § 10.45(b).[1]

21  _____

22      [1]Regardless, ACOG's membership includes over 90% of the nation's

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    The same issues were also raised repeatedly prior to 2022. FDA performed

2    a "full review" of the REMS in 2021 after being sued in federal court in Hawaii.

3    ECF No. 51-4 at 6. The 2021 review, prompted by litigation where FDA did not

4    even raise exhaustion, covered all the same points: the REMS, while medically

5    useless, trigger unnecessary costs and erect significant obstacles to patient care.

6    *See* Hughes Decl. Exs. B, C. Similarly, as FDA acknowledges (Resp. at 15–16),

7    fifteen Plaintiff States asked the FDA in 2020 to eliminate the REMS, identifying

8    the patient agreement and certification requirements as "onerous and medically

9    unnecessary"—but received only a form response. Hughes Decl. Ex. D at 2–3;

10   ECF No. 51-11. The States' letter there was part of a chorus of contemporaneous

11   letters and litigation urging FDA to abandon the REMS, just as the States urge

12   here. *See, e.g.*, ECF Nos. 1-9, 1-10, 1-12; Hughes Decl. Exs. B–M; *Am. Coll. of*

13   *Obstetricians & Gynecologists v. FDA*, 472 F. Supp. 3d 183 (D. Md. 2020).

14   These recent appeals to FDA occurred against the backdrop of the agency's

15   2016, full-scope review of the REMS (ECF No. 1-3), in which FDA ignored or

16   minimized the absence of evidence supporting the REMS, failed to consider

17   evidence of the burdens they impose in practice, and departed from its own

18   internal experts' recommendation (as the 2022 citizen petition pointed out).

19   Hughes Decl. Ex. A; ECF No. 35 ¶¶ 93–102; ECF No. 1-11 at 25 (unanimous

20   _____

21   OBGYNs, including several state-employee declarants in this case. Colwill Decl.

22   Ex. A; Nichols Decl. Ex. A; Prager Decl. Ex. A.

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    conclusion of CDER clinical team). The 2016 review squarely considered the

2    same issues the States raise here, which were also presented earlier in 2016 and

3    twice in 2015. Schreiber Decl. ¶ 43; ECF No. 1-9; Hughes Decl. Exs. E, F; ECF

4    1-10 at 27. Simply put, if this record does not satisfy exhaustion, nothing does.

5        This record also demonstrates why raising the same issues yet again would

6    be futile, distinguishing this case from those on which FDA relies. Resp. at 15;

7    *see El Rescate Legal Servs., Inc. v. EOIR*, 959 F.2d 742, 747 (9th Cir. 1991)

8    ("[T]here is no requirement of exhaustion where resort to the agency would be

9    futile."); *McCarthy v. Madigan*, 503 U.S. 140, 146, 148–49 (1992) (futility

10   "weigh[s] heavily against requiring administrative exhaustion"). Here, it is clear

11   that FDA's position is "already set[.]" *El Rescate*, 959 F.2d at 747. On this point,

12   FDA asserts only that its form response to the States' 2020 letter did not, standing

13   alone, demonstrate futility. Resp. at 16 n.3. But this ignores FDA's rejection of

14   successive requests to eliminate the REMS—even from its own internal experts.

15       FDA claims this case involves "technical and factual assertions" that it has

16   had no opportunity to consider. Resp. at 14. This is wrong, as all three of FDA's

17   examples demonstrate. *First*, FDA complains about "studies that were not before

18   the agency at the time of" its December 2021 review. *Id.* at 14, 25. But as noted

19   above, FDA was able to consider these studies for purposes of the 2023 REMS,

20   because ACOG cited them in its 2022 petition. FDA "cannot credibly argue" that

21   *another* "formal application" from the States with identical information would

22   make any difference. *Chinook Indian Nation v. Zinke*, 326 F. Supp. 3d 1128, 1144

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    (W.D. Wash. 2018). *Second*, FDA claims this lawsuit newly raises "safety

2    comparisons of mifepristone to other drugs[.]" Resp. at 14. But during its 2021

3    "full review" of the REMS, FDA considered information about comparator

4    drugs. ECF No. 51-5 at 7; Hughes Decl. Ex. B at 3. The States raised the same

5    issues in their 2020 letter to FDA. *Id.* Ex. D at 3 (noting mifepristone "is *four*

6    *times* safer than Viagra and *fourteen times* safer than carrying a pregnancy to

7    term"). *Third*, FDA claims this lawsuit newly raises "unique burdens" arising

8    from the REMS. Resp. at 14. But the mifepristone REMS have been unique since

9    the day they were implemented—no other drug has anything remotely like

10    them—and this point has been made ad nauseam to FDA. *See, e.g.*, Hughes Decl.

11    Ex. C at 41–42, 65–75, 86–87; *id.* Ex. A at 12–17; ECF No. 35 ¶¶ 96–98.

12        Finally, under well-established case law, exhaustion is not required in light

13    of the irreparable harm caused by the REMS amid an ongoing crisis of access to

14    reproductive health care. Mot. at 29–33; *see Bd. of Trs. of Constr. Laborers'*

15    *Pension Tr. for S. Cal. v. M.M. Sundt Constr. Co.*, 37 F.3d 1419, 1421 (9th Cir.

16    1994) (exhaustion excused where necessary to avoid irreparable harm).

17        **2.    The States have established standing**

18        None of FDA's generalized objections to the States' standing erases the

19    clear harms the States are suffering and will suffer absent an injunction. In terms

20    of costs, while not disputing that procedural abortions and pregnancy care are

21    costlier than medication abortions, FDA argues the States "provide no evidence"

22    that the REMS causes increased numbers of surgical abortions. Resp. at 18–19.

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    But the States' evidence shows just that. The REMS reduces the number of

2    providers of medication abortion, which delays treatment and makes some

3    patients ineligible for medication abortion altogether. Mot. at 10–11 (citing

4    multiple declarations and evidence incorporated into the complaint). This lack of

5    timely access to medication abortion forces some patients to choose either

6    procedural abortions or carrying unwanted pregnancies to term. *Id.* at 12–13, 27;

7    Nelson Decl. ¶ 13. This "causal chain" has exactly two links—hardly the sort of

8    leap that renders Plaintiffs' harms speculative. *Wash. Env't Council v. Bellon*,

9    732 F.3d 1131, 1141–42 (9th Cir. 2013) (citing cases); *see also City & Cnty. of*

10   *San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742, 754 (9th Cir.

11   2020) (finding alleged financial harm to states resulting from federal rule were

12   not speculative); *see also infra* II.B (discussing growth in abortion demand in the

13   Plaintiff States following the *Dobbs* decision).

14        Nor are the REMS like the "tax policy" at issue in *Simon v. E. Ky. Welfare*

15   *Rts. Org.*, 426 U.S. 26, 42–43 (1976). They are very real restrictions that directly

16   restrict providers and pharmacists—including the multiple declarants who

17   practice *as state employees*—from prescribing and dispensing mifepristone as

18   they do other medications. *See* ECF No. 4-1: Decls. of Colwill, DasGupta,

19   Godfrey, Henry, Hedenstrom, Schwartzkopf, Nichols, Prager, Shih. These

20   restrictions particularly impact patients in rural areas, causing some pregnant

21   patients in the Plaintiff States to "miss the very limited window in which to have

22   a safe and effective medication abortion," resulting in increased costs to the

PLAINTIFF STATES' REPLY IN                    6
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1  States. Godfrey Decl. ¶¶ 31–32. Because the REMS apply directly to State

2  employees, and "inflict[] a financial burden on the states" through their impacts

3  on patients, the States have standing. *See, e.g.*, *California v. Azar*, 911 F.3d 558,

4  571 (9th Cir. 2018) (states' allegation of economic harm sufficient to support

5  standing to challenge rule related to contraception coverage); *New York v. U.S.*

6  *Dep't of Agric.*, 454 F. Supp. 3d 297, 310 (S.D.N.Y. 2020) (states' allegation of

7  increased healthcare costs was sufficient injury for standing).

8      What is more, as the operators of facilities that prescribe and dispense

9  mifepristone, the States submitted evidence detailing how implementing the 2023

10  REMS has been a significant (and costly) undertaking. *See* Mot. at 30. FDA does

11  not dispute that such harm is sufficient to confer standing, but instead argues that

12  some of the steps necessary to implement the REMS "do not reflect burdens

13  imposed by the REMS itself." Resp. at 19. This argument reflects FDA's total

14  unwillingness to contend with the way the REMS operates *in the real world*. FDA

15  argues, for instance, that changes to and testing of information technology (IT)

16  systems is not a REMS requirement. *Id.* at 19–20. But of course it is. In a time of

17  electronic patient and medication records, state medical institutions and

18  pharmacies must obviously undertake IT work to implement and ensure

19  compliance with the REMS; indeed, FDA has pointed to telehealth as a reason

20  why the REMS is supposedly *not burdensome*. ECF No. 51-4 at 38, note w.

21  FDA's failure to so much as consider or account for IT burdens does not mean

22  that they do not exist. And even if IT work were not necessary to comply, FDA

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

7

1    does not dispute that the numerous other burdensome tasks being undertaken by

2    state institutions—including identifying providers who would like to become

3    REMS-certified; ensuring provider certifications are completed and provided to

4    certified pharmacies; developing secure systems to store lists of certified

5    prescribers; and training pharmacy staff on REMS requirements—*are* necessary

6    to comply. *See, e.g.*, ECF No. 4-1: Prager Decl. ¶¶ 32–37; Shih Decl. ¶¶ 15–19;

7    Reed Decl. ¶¶ 3–17; Godfrey Decl. ¶¶ 34–35; DasGupta Decl. ¶¶ 15–18. These

8    expensive burdens establish standing.

9         FDA further argues that the States lack *parens patriae* standing because, it

10    claims, only the United States acts as *parens* vis-à-vis individuals' relations with

11    the federal government. But this court has rejected such a "blanket prohibition."

12    *Washington v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 3d 1051, 1061 (E.D.

13    Wash. 2020). This is particularly true when state residents' health is involved.

14    *See New York v. Biden*, ---F.3d---, 2022 WL 5241880, at *7 (D.D.C. Oct. 6, 2022)

15    (rejecting argument that states cannot bring *parens* claims against federal

16    government where state jurisdictions' public health was at issue).

17         Lastly, FDA argues that a preliminary injunction would not redress the

18    States' injuries because the 2023 REMS is less restrictive than prior REMS. Resp.

19    20–21. But the Plaintiff States seek to enjoin the application of *any* REMS, such

20    that mifepristone can be prescribed just like the 20,000+ other drugs that don't

21    have one. Because an injunction "could reduce or eliminate those regulatory

22    restrictions, causation and redressability are satisfied." *Barnum Timber Co. v.*

8

1    *U.S. E.P.A.*, 633 F.3d 894, 901 (9th Cir. 2011).

2    **3.    The 2023 REMS is contrary to the REMS statute**

3        FDA begins with the premise that it is owed near-total deference, but no

4    deference is owed when the agency violates its governing statute and fails to meet

5    the standards Congress prescribed. The FDCA authorizes ETASU only when

6    they are "commensurate with" a "specific serious risk" such as "death" or

7    "hospitalization." 21 U.S.C. §§ 355-1(f)(2)(A), (f)(1)(A), (b)(4)(A). FDA may

8    implement ETASU only for drugs so "inherent[ly] toxic[] or potential[ly]

9    harmful[]" that—as a medical or scientific matter—FDA otherwise could not

10    approve them. *Id.* (f)(1). FDA does not even cite this statutory language in its

11    brief, and certainly makes no effort to meet it. Nor could it, when all the data

12    shows that mifepristone is among the safest drugs in the world, and safer than the

13    vast majority of drugs for which FDA has never attempted to impose a REMS.

14        FDA's response—that it "has found mifepristone to be safe *with* the REMS

15    requirements" (Resp. at 24)—is a tautology. A safe drug without REMS will

16    *always* be a safe drug with REMS. A safe drug is a safe drug. FDA cannot rely

17    on the REMS to prove the REMS is necessary. And FDA cannot credibly claim

18    a REMS is justified for mifepristone when it has approved a higher dose of the

19    same drug—Korlym—without a REMS. FDA's response that Korlym is used to

20    treat a different condition (Resp. at 24–25) only proves Plaintiffs' point. The

21    ETASU provisions require "inherent toxicity or potential harmfulness" of a

22    "drug" itself. 21 U.S.C. § 355-1(f)(1). FDA may not apply a heightened standard

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    when a drug is used for abortion, but not other purposes. *Cf. Bracco Diagnostics,*

2    *Inc. v. Shalala*, 963 F. Supp. 20, 28 (D.D.C. 1997) ("The disparate treatment of

3    functionally indistinguishable products is the essence of the meaning of arbitrary

4    and capricious."); *Tummino v. Hamburg*, 936 F. Supp. 2d 162, 169 (E.D.N.Y.

5    2013) ("The standards are the same for aspirin and for contraceptives."). Because

6    mifepristone does not meet the requirements of the REMS statute, the 2023

7    REMS is invalid as a matter of law.

8        **4.    The 2023 REMS is blatantly arbitrary and capricious**

9        All agencies—including FDA—must engage in "reasoned decision-

10    making." *Cigar Ass'n of Am. v. FDA*, No. 16-cv-01460 (APM), 2022 WL

11    2438512, at *7 (D.D.C. Jul. 5, 2022). Courts have overruled FDA's actions when

12    the agency has, for example, failed to consider relevant evidence, *id.*; held

13    comparable drugs to different standards, *Braeburn Inc. v. FDA*, 389 F. Supp. 3d

14    1, 28–32 (D.D.C. 2019); failed to consider statutory requirements or how a drug

15    would likely be used in the real world, *Bayer HealthCare, LLC v. FDA*, 942 F.

16    Supp. 2d 17, 24–25 (D.D.C. 2013); or imposed restrictions that were

17    "unnecessary" based on the evidence before the agency, *ACOG*, 472 F. Supp. 3d

18    at 223 (quotation omitted).

19        All of those things happened here. Most glaringly, the 2021 review that

20    FDA holds up as evidence of its expertise does not mention—even once—the

21    statutory requirement that a REMS only be imposed for medications associated

22    with a "serious adverse drug experience" like hospitalization or death. 21 U.S.C.

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  § 355-1(f)(1)(A). Nor does FDA ever once consider the REMS' impacts on

2  "patients in rural or medically underserved areas," even though it is statutorily

3  required to do so. *Id.* §§ 355-1(f)(2)(C)–(D). Indeed, FDA expressly "excluded"

4  from its consideration "the logistics of accessing abortion care," including "time

5  to appointment or the distance traveled to obtain care." ECF No. 51-4 at 12–13.

6  "[B]ecause the agency neglected to consider [these] statutorily mandated

7  factor[s]," and provided no evidence-backed analysis, its decision was arbitrary

8  and capricious. *Pub. Citizen v. Fed. Motor Carrier Safety Admin.*, 374 F.3d 1209,

9  1216 (D.C. Cir. 2004).

10  FDA also disregarded evidence that undermines the REMS. *See, e.g.*, ECF

11  No. 51-4 at 22 (dismissing, without discussion, evidence finding "no adverse

12  events" from dispensing by "non-certified healthcare providers"); ECF No. 35

13  ¶¶ 143–44 (FDA summarily dismissed Canadian study showing no increase in

14  adverse events after removal of REMS-like restrictions). "Where, as here, an

15  agency speaks in absolute terms that there is no evidence, it acts arbitrarily and

16  capriciously when there is in fact pertinent record evidence and the agency

17  ignores or overlooks it." *Cigar Ass'n of Am.*, 2022 WL 2438512, at *7.

18  FDA also ignored evidence about *why* mifepristone is safe. Its safety is

19  inherent *in the drug itself*, not because of the REMS:

20  Mifepristone's chemical structure itself supports the conclusion that
    mifepristone is extremely safe. It is chemically similar to

21  norethindrone, which was the original progestin formulation used in
    early oral contraceptive pills and which is still widely used today.

22  Because it is so similar in structure to a widely used progestin,

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

11

1    mifepristone is unlikely to be toxic to patients.

2    Schreiber Decl. ¶ 22. FDA knows mifepristone is fundamentally safe without a

3    REMS: it approved Korlym without one. But when it came to mifepristone for

4    abortion, FDA not only failed to consider evidence of its inherent safety, it

5    expressly "excluded" such evidence from its review. ECF No. 51-4 at 12–13

6    (FDA's analysis "excluded . . . [i]nformation pertinent to molecular or other

7    basic science aspects of mifepristone").

8        Lastly, FDA wholly failed to consider the patient harms caused by the

9    REMS. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*

10   *Co.*, 463 U.S. 29, 43 (1983) (agency action is "arbitrary and capricious if the

11   agency . . . entirely failed to consider an important aspect of the problem"). There

12   is, for example, no discussion whatsoever in FDA's 2021 memo about the REMS

13   reducing medication abortion's availability or deterring providers. Rather, the

14   memo makes clear that FDA *decided to disregard* studies showing the REMS

15   acts as a barrier to patient care. ECF No. 51-4 at 12 (noting that FDA's analysis

16   "excluded" . . . "[i]nformation from survey studies or qualitative studies that

17   evaluated perspectives on and/or satisfaction with medical abortion procedures

18   from patients, pharmacists, clinic staff, or providers, even if the study assessed

19   REMS ETASUs"). Indeed, FDA explicitly excluded one of the studies it now

20   faults the States for not bringing to its attention via a citizen petition. *Id.* at 49

21   (noting that FDA disregarded Calloway D et al. Contraception 2021; 104(1): 24–

22   28 because it "[p]rimarily addresses provider stigma around abortion care").

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

12

1    FDA cannot cherry-pick evidence to justify singling out an extremely safe

2    drug for disfavored treatment. Its decision to do so was arbitrary and capricious.

3    **B.      The Plaintiff States Are Irreparably Harmed**

4         FDA does not provide a single witness declaration in support of its

5    response, and offers no rebuttal to the hundreds of pages of declarations attesting

6    to the harms suffered by the States and their residents as a result of the 2023

7    REMS, *see* Mot. at 26–31. Instead, FDA argues that the States should have

8    challenged an earlier version of the REMS. Resp. at 27.

9         This argument completely ignores the unprecedented crisis in abortion

10   access following *Dobbs*. The harms caused by the 2023 REMS must be analyzed

11   in this context, which Defendant Becerra himself described as "a moment of

12   crisis in health care." Hughes Decl. Ex. G. Since *Dobbs*, the States have

13   experienced a tidal wave of out-of-state patients seeking abortions. ECF No. 4-1:

14   Cantrell Decl. ¶¶ 5, 7; Dillon Decl. ¶¶ 8–13; *see also* Nelson Decl. ¶ 10. For

15   example, in January 2023, Planned Parenthood of Greater Washington and

16   Northern Idaho saw a ***75% increase*** in Idaho patients, compared with January

17   2022, including a "***90% increase*** for medication abortion visits from Idaho."

18   Dillon Decl. ¶ 10 (emphasis added). This increased patient volume has led to

19   delays in abortion care and other consequences, including higher risks of

20   complications, increased costs, and unnecessary trauma and stress for patients, as

21   well as increasing burdens on an already overtaxed healthcare system. *Id.* ¶¶ 14–

22   22; Godfrey Decl. ¶¶ 28, 31. FDA concedes all of this. [FDA's] Opp'n to Pls.'

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Mot. for Prelim. Inj., *All. for Hippocratic Med. v. FDA*, No. 2:22-cv-00223-Z

2  (N.D. Tex. Jan. 13, 2023), ECF No. 28 at 48–49.

3       The 2023 REMS exacerbates these growing harms. On top of the

4  challenges caused by increased patient volumes from anti-abortion states, the

5  REMS restrictions themselves make mifepristone harder to prescribe, dispense,

6  and obtain. ECF No. 4-1: Gold Decl. ¶¶ 15–16, 27; Godfrey Decl. ¶¶ 17–22; Shih

7  Decl. ¶¶ 21–29; Colwill Decl. ¶¶ 18–25; Nichols Decl. ¶ 38; Janiak Decl. ¶¶ 15–

8  20; Downing Decl. ¶¶ 9–16; Henry Decl. ¶¶ 6–8; Lazarus Decl. ¶¶ 17–20; ECF

9  No. 35 ¶¶ 136–138. There are no two ways about it: delayed treatment causes

10  patients to miss the narrow window for medication abortion altogether, resulting

11  in more-expensive procedural abortion or maternity care. Mot. at 24–33; Dillon

12  Decl. ¶¶ 18, 14; Godfrey Decl. ¶ 30; Shih Decl. ¶ 27. All of this imposes

13  unrecoverable costs on the States, an irreparable harm.

14       As FDA also well knows, the post-*Dobbs* environment is a minefield of

15  risks for abortion patients and providers. As medical expert Marji Gold, M.D.,

16  explains, post-*Dobbs* legislation in anti-abortion states works in concert with the

17  2023 REMS to limit access to abortion even in the Plaintiff States:

18         In the current hostile environment surrounding abortion care, which
       includes states passing bills that empower ordinary citizens to sue

19         anyone they deem has "aided and abetted" a person seeking an
       abortion, clinicians may be reluctant to become certified and thus be

20         identified as a person who prescribes mifepristone. Since the REMS
       requires certified prescribers to send their signed forms to *each*

21         certified pharmacy at which they intend to prescribe, clinicians who
       wish to provide this care have reason to be concerned that an anti-

22         abortion staff or pharmacist at a pharmacy might leak the

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

14

confidential list and expose them to possible violence and/or civil or criminal liability.

Gold Decl. ¶ 18; *see also* Prager Decl. ¶¶ 38–40; Shih Decl. ¶¶ 23–25. Effects of the REMS were vastly different pre-*Dobbs*, when abortion was a constitutional right nationwide. But by re-imposing the REMS post-*Dobbs*, FDA compounded the very access problems Secretary Becerra committed to ameliorating.

FDA's argument that the Plaintiff States "delay[ed] in seeking relief" fares no better. Resp. at 27–29. While some state healthcare institutions began taking steps prior to January 2023 to prepare for what they expected to be contained in the forthcoming REMS, Defendants' public statements post-*Dobbs* signaled that they might finally follow the medical science, comply with their statutory obligation to reduce burdens on access, and get rid of the REMS once and for all. Secretary Becerra insisted that FDA would take steps to *protect* mifepristone access, noting: "*Working to increase access to this drug is a national imperative and in the public interest.*" Hughes Decl. Ex. G. It was not until FDA took final agency action on January 3, 2023, that the States knew the agency had nevertheless decided to continue to restrict access to mifepristone. Taking seven weeks to assemble a multi-state coalition and gather evidence following this final agency action hardly evinces a "lack of urgency," Resp. at 29—and does nothing to negate the States' mountain of evidence demonstrating irreparable harm.

## C.   The Public Interest and Equities Favor Enjoining the REMS

The REMS restrict access to abortion at a time when abortion rights are

PLAINTIFF STATES' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

under unprecedented attack. Tellingly, Defendants are silent on the effect of an injunction on patients. Rather, they rely entirely on self-preservation concerns about the need to "defer[] to FDA's judgments." Resp. at 30. But that rationale for deference evaporates here, where FDA has acted contrary to law and abused its discretion by re-imposing arbitrary and unfounded restrictions on medication abortion. The public interest and equities weigh strongly in the States' favor.

### D.   Plaintiffs' Requested Relief Matches the Harm Shown: Eliminating Unnecessary Restrictions on Mifepristone in the Plaintiff States

Defendants argue that an injunction prohibiting them from reducing mifepristone's availability is "untethered to any actual claim for relief[.]" Resp. at 31–34. But the States prayed for exactly this relief, ECF No. 35 ¶¶ IX(a), (e), which is a necessary condition precedent to their request that FDA remove the REMS so that access to mifepristone can be expanded, *id.* ¶¶ IX(b)–(d). Both components of relief are plainly necessary. Given the irreparable harm Plaintiffs have shown from the REMS, it would *a fortiori* unleash devastating harm if Defendants were permitted to restrict mifepristone yet further, for example by re-implementing previous REMS or withdrawing the drug from the market. Under these circumstances, the *minimum* relief Plaintiffs require is an order "freez[ing] the positions of the parties"—here, mifepristone's current baseline of availability in the Plaintiff States—"until the court can hear the case on the merits." *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983). Such an order can, and should, enjoin Defendants from "chang[ing] this status quo" until the case concludes. *Ariz.*

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014).[2]

2    Nor do the Plaintiff States' requests violate Rule 65(d)'s specificity

3    requirement. "[T]he scope of an injunction or restraining order may be broad but

4    at the same time be drafted in a manner that is not vague . . . There is no inherent

5    inconsistency between the two characteristics." 11A Charles A. Wright & Arthur

6    R. Miller, *Fed. Prac. & Proc. Civ.* § 2955 (3d ed. 2022). Here, Plaintiffs request

7    a specific order enjoining Defendants from doing two things: (1) enforcing the

8    2023 REMS, and (2) changing the status quo to make mifepristone less available

9    in the Plaintiff States. Injunctions of similar specificity have been entered against

10   FDA before, and this Court should enter one here. *See, e.g.*, *Cook v. FDA*, 733

11   F.3d 1, 5 (D.D.C. 2013) (affirming injunction against FDA's "permitting the

12   entry of, or releasing any future shipments of" drugs used for lethal injection);

13   *Bracco Diagnostics*, 963 F. Supp. at 31 ("enjoin[ing] the FDA from proceeding

14   with any approval or review proceedings relating to any of plaintiffs' products"

15   until FDA had responded to citizen review petition).

16                           **III.    CONCLUSION**

17   The Plaintiff States' motion for a preliminary injunction should be granted.

18

19   _____

20   [2]Defendants' strained hypothetical about contaminated drugs, Resp. at 33–

21   34, is irrelevant. Plaintiffs seek an order preserving the status quo. Contaminated

22   drugs are already illegal under the status quo. 21 U.S.C. §§ 331(a), (c).

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION                17        ATTORNEY GENERAL OF WASHINGTON
                                                         Complex Litigation Division
                                                         800 Fifth Avenue, Suite 2000
                                                         Seattle, WA 98104-3188
                                                         (206) 464-7744

1    DATED this 24th day of March, 2023.

2                              ROBERT W. FERGUSON
                             Attorney General
3
                             /s/ Kristin Beneski
4                              NOAH GUZZO PURCELL, WSBA #43492
                             Solicitor General
5                              KRISTIN BENESKI, WSBA #45478
                             First Assistant Attorney General
6                              COLLEEN M. MELODY, WSBA #42275
                             Civil Rights Division Chief
7                              ANDREW R.W. HUGHES, WSBA #49515
                             LAURYN K. FRAAS, WSBA #53238
8                              Assistant Attorneys General
                             TERA M. HEINTZ, WSBA #54921
9                              Deputy Solicitor General
                             800 Fifth Avenue, Suite 2000
10                             Seattle, WA  98104-3188
                             (206) 464-7744
11                             Attorneys for Plaintiff State of Washington

12

13                             ELLEN F. ROSENBLUM
                             Attorney General of Oregon

14                             /s/ Marc Hull
                             SANDER MARCUS HULL WSBA #35986
15                             CARLA A. SCOTT WSBA #39947
                             Senior Assistant Attorney General
16                             YOUNGWOO JOH OSB #164105
                             Assistant Attorney General
17                             Trial Attorneys
                             Tel (971) 673-1880
18                             Fax (971) 673-5000
                             marcus.hull@doj.state.or.us
19                             youngwoo.joh@doj.state.or.us
                             Attorneys for Plaintiff State of Oregon

20

21

22

PLAINTIFF STATES' REPLY IN              18              ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOTION FOR                                        Complex Litigation Division
PRELIMINARY INJUNCTION                                         800 Fifth Avenue, Suite 2000
                                                               Seattle, WA 98104-3188
                                                                 (206) 464-7744

1    KRIS MAYES
     Attorney General of Arizona

2
     /s/ Daniel C. Barr
3    Daniel C. Barr (Arizona No. 010149)
     Chief Deputy Attorney General
4    Luci D. Davis (Arizona No. 35347)
     Assistant Attorney General
5    Office of the Attorney General of Arizona
     2005 N. Central Ave.
6    Phoenix, AZ 85004-1592
     Phone: (602) 542-8080
7    Email: Daniel.Barr@azag.gov
             Luci.Davis@azag.gov
8    *Attorney for Plaintiff State of Arizona*

9    PHILIP J. WEISER
     Attorney General of Colorado

10
     /s/ Eric Olson
11   ERIC OLSON, CO #36414
     Solicitor General
12   MICHAEL MCMASTER, CO #42368
     Assistant Solicitor General
13   Office of the Attorney General
     Colorado Department of Law
14   1300 Broadway, 10th Floor
     Denver, CO 80203
15   Phone: (720) 508-6000
     *Attorneys for Plaintiff State of Colorado*

16
     WILLIAM TONG
17   Attorney General of Connecticut

18   /s/ Joshua Perry
     Joshua Perry*
19   Solicitor General
     Office of the Connecticut Attorney General
20   165 Capitol Ave, Hartford, CT 06106
     Joshua.perry@ct.gov
21   (860) 808-5372
     Fax: (860) 808-5387
22   *Attorney for Plaintiff State of Connecticut*

PLAINTIFF STATES' REPLY IN             19
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Vanessa L. Kassab*
VANESSA L. KASSAB
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
vanessa.kassab@delaware.gov
*Attorney for Plaintiff State of Delaware*


KWAME RAOUL
Attorney General of Illinois

*/s/ Caitlyn G. McEllis*
Caitlyn G. McEllis (6306561)
Senior Policy Counsel
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601
Phone: (312) 793-2394
Caitlyn.McEllis@ilag.gov
*Attorney for Plaintiff State of Illinois*


DANA NESSEL
Attorney General of Michigan

*/s/ Stephanie M. Service*
Stephanie M. Service (P73305)
Assistant Attorney General
Michigan Department of Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
ServiceS3@michigan.gov
*Attorney for Plaintiff Attorney General of Michigan*

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

AARON D. FORD
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)*
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov
*Attorney for Plaintiff State of Nevada*


RAÚL TORREZ
Attorney General of New Mexico

*/s/ Aletheia Allen*
Aletheia Allen
Solicitor General
New Mexico Office of the Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM 87102
AAllen@nmag.gov
*Attorney for Plaintiff State of New Mexico*


PETER F. NERONHA
Attorney General of Rhode Island

*/s/ Julia C. Harvey*
JULIA C. HARVEY #10529
Special Assistant Attorney General
150 S. Main Street
Providence, RI 02903
(401) 274-4400 x2103
*Attorney for Plaintiff State of Rhode Island*

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

CHARITY R. CLARK
Attorney General of Vermont

*/s/ Eleanor L.P. Spottswood*
ELEANOR L.P. SPOTTSWOOD*
Solicitor General
109 State Street
Montpelier, VT 05609-1001
(802)793-1646
eleanor.spottswood@vermont.gov
*Attorney for Plaintiff State of Vermont*

BRIAN L. SCHWALB
Attorney General for the District of
Columbia
JENNIFER C. JONES
Deputy Attorney General
Public Advocacy Division
WILLIAM STEPHENS
Counsel to the Deputy

*/s/ Nicole S. Hill*
NICOLE S. HILL
Assistant Attorney General
Office of the Attorney General for the
District of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
*Attorney for Plaintiff District of Columbia*

ANNE E. LOPEZ
Attorney General

*/s/ Erin N. Lau*
Erin N. Lau 009887*
465 South King St., Room 200
Honolulu, Hawaii 96813
Erin.N.Lau@hawaii.gov
*Attorney for Plaintiff State of Hawaii*

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   AARON M. FREY
    Attorney General
2
    */s/ Halliday Moncure*
3   Halliday Moncure, Bar No. 4559
    Assistant Attorney General
4   Office of the Maine Attorney General
    6 State House Station
5   Augusta, ME 04333-0006
    (207) 626-8800
6   halliday.moncure@maine.gov
    *Attorney for Plaintiff State of Maine*
7
    ANTHONY G. BROWN
8   Attorney General of Maryland
9   */s/ Steven M. Sullivan*
    STEVEN M. SULLIVAN*
10  Solicitor General
    Office of the Attorney General of Maryland
11  200 Saint Paul Place, 20th Floor
    Baltimore, Maryland 21202
12  (410) 576-6427
    ssullivan@oag.state.md.us
13  *Attorney for Plaintiff State of Maryland*
14  KEITH ELLISON
    Attorney General
15  State of Minnesota
16  */s/ Liz Kramer*
    LIZ KRAMER (#0325089)
17  Solicitor General
    JENNIFER OLSON (#0391356)
18  Assistant Attorney General
    445 Minnesota Street, Suite 1400
19  St. Paul, Minnesota 55101-2131
    (651) 757-1010 (Voice)
20  (651) 282-5832 (Fax)
    liz.kramer@ag.state.mn.us
21  jennifer.olson@ag.state.mn.us
    *Attorneys for Plaintiff State of Minnesota*
22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

MICHELLE A. HENRY
Attorney General of Pennsylvania

*/s/ Jill M. Graziano*
JILL M. GRAZIANO (Pa Bar No. 82725)
Chief Counsel to the Attorney General
1000 Madison Ave., Ste. 310
Norristown, PA 19403
jgraziano@attorneygeneral.gov
(484) 460-1330
*Attorney for the Commonwealth of*
*Pennsylvania*

*Applications for pro hac vice admission*
*forthcoming*

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

24

1

## **<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that on March 24, 2023, I electronically filed the foregoing

3    with the Clerk of the Court using the CM/ECF System, which in turn

4    automatically generated a Notice of Electronic Filing (NEF) to all parties in the

5    case who are registered users of the CM/ECF system. The NEF for the foregoing

6    specifically identifies recipients of electronic notice.

7        DATED this 24th day of March 2023, at Seattle, Washington.

8                                    */s/ Kristin Beneski*
                                    KRISTIN BENESKI, WSBA #45478
9                                    First Assistant Attorney General

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF STATES' REPLY IN                25            ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOTION FOR                                            Complex Litigation Division
                                                                     800 Fifth Avenue, Suite 2000
PRELIMINARY INJUNCTION                                               Seattle, WA 98104-3188
                                                                        (206) 464-7744