ROBERT W. FERGUSON
Attorney General
NOAH GUZZO PURCELL, WSBA #43492
Solicitor General
KRISTIN BENESKI, WSBA #45478
First Assistant Attorney General
COLLEEN M. MELODY, WSBA #42275
Civil Rights Division Chief
ANDREW R.W. HUGHES, WSBA #49515
LAURYN K. FRAAS, WSBA #53238
Assistant Attorneys General
TERA M. HEINTZ, WSBA #54921
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF OREGON; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF ILLINOIS; ATTORNEY GENERAL OF MICHIGAN; STATE OF NEVADA; STATE OF NEW MEXICO; STATE OF RHODE ISLAND; STATE OF VERMONT; DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE OF MAINE; STATE OF MARYLAND; STATE OF MINNESOTA; and COMMONWEALTH OF PENNSYLVANIA,<br>　　　　　　Plaintiffs,<br>　v. | NO. 1:23-cv-03026<br><br>DECLARATION OF KAREN NELSON |

| | |
|---|---|
| 1 | UNITED STATES FOOD AND DRUG ADMINISTRATION, et al., |
| 2 | |
| 3 | Defendants. |

I, Karen Nelson, declare as follows:

1. I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am the President and CEO of Planned Parenthood of Maryland, Inc. (PPM). I have been President and CEO of PPM since March 2016. I have worked for Planned Parenthood organizations since 1994, including serving as President and CEO from 2008-2016 for Planned Parenthood of Central and Western New York and its predecessor organization, Planned Parenthood of Western New York.

3. This declaration is based on my personal knowledge, professional knowledge, my review of PPM's records, and the knowledge that I have acquired in the 29 years of service with affiliates of Planned Parenthood. If called and sworn as a witness, I could and would testify competently to the information contained in this declaration.

4. There are two Planned Parenthood affiliates that operate health centers in Maryland: PPM and Planned Parenthood of Metropolitan Washington, DC, Inc. (PPMW). PPM and PPMW are separately incorporated entities. PPMW is responsible for services in Montgomery and Prince George's counties, and

DECLARATION OF
KAREN NELSON

2

ATTORNEY GENERAL OF MARYLAND
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6300

PPM has responsibility for the rest of the state. Planned Parenthood's mission in Maryland includes providing a wide range of high quality, affordable reproductive health care services; education to empower individuals to make informed reproductive choices; and advocacy to protect the right to make those choices.

**Access to Abortion in Maryland**

5. Collectively, PPM and PPMW currently operate nine health centers providing 8,700 abortion visits a year in Maryland. A map of the locations of Planned Parenthood health centers in Maryland is attached as Exhibit A. Each clinic offers medication abortions. Procedural abortions are available only at PPM's sites in Baltimore City and Annapolis.

6. Access to abortions in Maryland, particularly in the rural areas, is limited. According to the Guttmacher's Institute's last survey of providers in Maryland in 2020, 63% of Maryland counties had no clinics providing abortion care, and 23% of women lived in those counties. https://onlinelibrary.wiley.com/doi/epdf/10.1363/psrh.12215

7. PPM and PPMW's clinics are located in medically underserved communities. Forty-four percent of PPM and PPMW's abortion patients are enrolled in the Maryland Medical Assistance Program.

8. Maryland has a long history of protecting abortion rights. In 1991, the Maryland General Assembly passed legislation to repeal pre-*Roe* abortion

restrictions and to codify the right to abortion. This legislation was ratified by the voters of Maryland in 1992 in a referendum known as Question 6. In anticipation of the *Dobbs* decision, in 2022, the Maryland General Assembly enacted the Abortion Care Access Act to, among other things, increase the number and diversity of abortion providers, provide for abortion care coverage without cost-sharing and deductible requirements in state-regulated private plans, and require the Maryland Medical Assistance Program to provide abortion care coverage without restrictions that would be inconsistent with the rights protected by Maryland statutes. The Maryland Medical Assistance Program had provided abortion care coverage under certain circumstances prior to the Abortion Care Access Act, but the Act removed the Program's previous restriction that limited coverage to individuals who were the survivors of rape or incest, had fetuses with severe abnormalities, or faced serious somatic or mental health issues.

9. Despite Maryland's long history of protecting abortion rights, Maryland has twice as many pregnancy centers as abortion clinics. https://cnsmaryland.org/2021/10/29/anti-abortion-crisis-pregnancy-centers-outnumber-abortion-providers-in-maryland-2-to-1/. Crisis pregnancy centers are organizations that provide services such as pregnancy testing and referrals to adoption centers but withhold accurate information about or referrals for abortion services. Pregnant individuals have greater access to crisis pregnancy centers than abortion providers in Maryland, particularly on the Eastern Shore and in

DECLARATION OF
KAREN NELSON

4

ATTORNEY GENERAL OF MARYLAND
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6300

1 | Southern Maryland. Crisis pregnancy centers, which do not provide medication abortion, face no regulatory restrictions such as the REMS provider agreements. Meanwhile, abortion clinics and private providers must comply with the FDA's REMS requirements, including the provider agreement, for Mifepristone. Such restrictions have contributed to the shortage of abortion providers.

**The Impacts of *Dobbs***

10. Maryland is the southernmost state on the East Coast where the legality of abortion is not under threat. As a result, Maryland plays an important role in providing access to abortion in the Mid-Atlantic and Southern Region. Following the *Dobbs* decision, our neighboring state of West Virginia banned abortion. As a result, Western Maryland has become the closest option for many people in West Virginia seeking abortion care. People from Pennsylvania also travel to Maryland for abortion services because Pennsylvania imposes restrictions such as 24-hour waiting periods. Despite the increased need for access to abortion services in the three counties of Western Maryland since the *Dobbs* decision, abortion access remains very limited. There are no abortion providers in Garrett and Allegany Counties. While there is a provider of medication and procedural abortion care in Washington County in Western Maryland, we understand that the clinic has limited hours and frequent protests may intimidate or deter some people in seeking care at that location. While the recent change in the REMS permitting certified pharmacies to dispense

1  Mifepristone could improve access in Maryland through telehealth, we are
2  concerned that the number and location of certified pharmacies may be too
3  limited. Research shows that the number of counties across the country without
4  a pharmacy has grown by 630 between 2003 and 2018, with an additional 302
5  counties being left with a single pharmacy. https://rupri.org/wp-
6  content/uploads/2018-Pharmacy-Closures.pdf. As more states ban abortion, we
7  are expecting out-of-state patients to increasingly rely on Maryland providers in
8  all regions. However, most providers of procedural care are concentrated in the
9  Baltimore-Washington metropolitan area.

**Mifepristone**

11. All of PPM and PPMW's clinics provide medication abortions using mifepristone, an essential medicine for patients and providers. Seventy-six percent of abortions performed at PPM and PPMW's clinics are medication abortions involving the use of mifepristone.

12. If patients cannot access mifepristone, negative consequences will occur. When patients are not able to access mifepristone, their options are misoprostol-only abortions or procedural abortions.

13. For patients who do not have access to mifepristone or are unable to obtain a medication abortion within the first ten weeks of pregnancy, procedural abortion may be their only option. Patients should be able to choose which option

is best for them, in consultation with their providers, and our data shows that most patients prefer medication abortion.

14. Procedural abortions are also more difficult to access. Unlike mifepristone, which is available at each of PPM and PPMW's clinics, including telehealth appointments, and can be mailed to patients in Maryland, procedural abortions can be obtained only at PPM's sites in Baltimore and Annapolis. In Western Maryland, we know of only one procedural care provider who offers a limited number of hours, and we understand there are no providers of procedural abortions in Southern Maryland and on the Eastern Shore.

15. Procedural abortion can also be more expensive. While PPM charges the same rate for first trimester procedural abortions and medication abortions, we understand other providers may charge more for procedural care. PPM and other providers also generally charge more for procedural care for individuals whose pregnancy has further progressed. Some abortion providers, who provide services in either a hospital or ambulatory surgery center setting, require the Maryland Medicaid Assistance Program to pay a facility fee. If the Maryland Medicaid Assistance Program must pay for more procedural care, particularly for procedures later in pregnancy, the Program will likely see an increase in claims for facility fees.

16. PPM and other providers will be forced to adopt misoprostol-only regimens if mifepristone is not available. The misoprostol-only regimen is a less

effective regimen compared to mifepristone and misoprostol combination. Relying on misoprostol only increases rates of failed medication abortion with ongoing pregnancy, increases rates of incomplete abortions requiring additional visits and procedures, and results in more complications such as retained pregnancy tissue and excessive bleeding. A misoprostol-only regimen is a longer process for patients to manage. The average time of heavy bleeding and cramping with mifepristone and misoprostol is 4 to 6 hours. With misoprostol-only, this period is between 12-18 hours. As a result, patients will need to take more leave from work or school and face additional challenges in managing family obligations. For out-of-state patients, patients may require longer stays, increasing their expenses because of higher travel and lodging costs as well as more time off work.

17. Mifepristone is also used in second trimester procedural abortion and induction of labor abortion. Without mifepristone, these procedures will require a longer time to complete and possibly increase risk of complications as providers must start using a regimen that is less effective or less familiar to complete these procedures. Patient discomfort may also increase during pre-abortion procedures as osmotic dilators will be needed to prepare the cervix, which may have been avoided by using a protocol that includes mifepristone.

18. If access to medication abortion is reduced, more patients will need procedural care. As there are fewer providers that offer procedural care, patients

will likely experience delays in accessing procedural care. As a result, patients may be later in pregnancy when obtaining procedural care, which can increase the risk of complications, the cost for the procedure and travel, and the need for additional comfort measures and sedation. There is also risk of overwhelming a network of abortion providers who are already stretched in responding to the need to provide more services to out-of-state patients following the *Dobbs* decision.

19. If mifepristone is not available for medication abortion, providers will face the challenge of meeting the needs for more procedural care. There is already a shortage of providers offering procedural care, made more severe by the general shortage of health care professionals. Just as in other states, Maryland is facing a health care professional shortage that spans across all health occupations, including physicians, advanced practice clinicians, and nurses. Providers will also have to expand capacity to address the higher rate of complications from the misoprostol-only regimen. Providers will also face additional costs and time for clinical administrative staff to create training materials to train staff on misoprostol-only regimen, patient counseling, and patient education materials. In addition, providers will need to work with private insurers, the Maryland Medical Assistance Program, and other payors to change reimbursement policies which are all based on a mifepristone-misoprostol combination for care. Providers also anticipate that many patients may think that medication abortion is no longer available if mifepristone is no longer

DECLARATION OF
KAREN NELSON

9

ATTORNEY GENERAL OF MARYLAND
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6300

available. Patients are already confused about whether abortion is legal because of the constantly changing legal landscape, and providers will need to invest additional resources about educating patients about the continued availability of misoprostol for medication abortion.

**The 2023 Mifepristone REMS**

20.     As part of the Maryland's Abortion Care Access Act of 2022, the Maryland General Assembly established the Abortion Care Clinical Training Program with a required annual appropriation of $3.5 million in state funding. The goal of this state-funded program is to increase the number and diversity of abortion providers as well as support the integration of abortion care into a full range of health care settings, including private practice settings. https://mgaleg.maryland.gov/cmte_testimony/2022/hgo/1x16G_PH6b5hEmXDQmybkZEtaYAOn8uUy.pdf  However, the promise of this state investment will not be realized if the REMS remains in place, as it creates a barrier for practitioners, particularly those in private practices with fewer administrative resources to navigate the required provider and patient agreements.

I declare under penalty of perjury under the laws of the State of Maryland and the United States of America that the foregoing is true and correct.

1  DATED this **23** day of March, 2023, at Baltimore,
2  Maryland **21201**.

*Karen Nelson*
KAREN NELSON
President and CEO
Planned Parenthood of Maryland

DECLARATION OF
KAREN NELSON

11

ATTORNEY GENERAL OF MARYLAND
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6300

***Exhibit A***

DECLARATION OF
KAREN NELSON

12

ATTORNEY GENERAL OF MARYLAND
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6300

# HEALTH CENTERS

**1 Annapolis**
929 West St.
Suite 200
Annapolis, MD 21401

**2 Baltimore**
330 N. Howard Street
Baltimore, MD 21201

**3 Easton**
8579 Commerce Drive
Suite 102
Easton, MD 21601

**4 Frederick**
170 Thomas Johnson Drive
Suite 100
Frederick, MD 21702

**5 Owings Mills**
1866 Reisterstown Road
Suite D
Pikesville, MD 21208

**6 Towson**
8501 LaSalle Rd
Suite 309
Towson, MD 21286

**7 Waldorf**
Gateway Plaza
3975 St. Charles Parkway
Waldorf, MD 20602

**8 Suitland**
5001 Silver Hill Road
Suite 103
Suitland, MD 20746

**9 Gaithersburg**
19650 Clubhouse Road
Suite 101
Gaithersburg, MD 20886